HURON-CLINTON METROPOLITAN AUTHORITY
*v.*
OAKLAND COUNTY SUPERVISORS.

1. TAXATION—METROPOLITAN DISTRICT NOT A TAX UNIT.

Statute creating a five-county metropolitan authority did not create a separate and independent tax unit to which its portion of millage tax must be apportioned by the tax allocation boards of the respective counties (Act No. 62, Pub. Acts 1933, as amended; Act No. 147, § 7, Pub. Acts 1939).

2. SAME—STATE-EQUALIZED VALUATION—METROPOLITAN DISTRICTS.

The State board of equalization is the final authority which determines valuations upon a standard uniform to all counties and the tax rate of a metropolitan authority whose district comprises more than one county should be determined upon the basis of State-equalized valuation (Act No. 147, § 7, Pub. Acts 1939).

3. SAME—BUDGETS—EFFECT OF EQUALIZATION.

Although budgets or estimates of local units of government must be filed with the county tax allocation board on or before the second Monday in May of each year and the board uses the assessed valuation as equalized for the previous year in determining the tax rate, the amount of money to be raised is subject to variations by the future process of State equalization (Act No. 62, Pub. Acts 1933; as amended; Act No. 147, § 7, Pub. Acts 1939).

4. SAME—MEASURE OF TAX RATE—CURRENT EQUALIZED ASSESSED VALUATION.

The measure of the tax rate is the assessed valuation of the current year as corrected by equalization for the next tax roll and each year establishes a new valuation for the levy of its taxes.

5. SAME—LEVY AND COLLECTION—VALUATION.

All taxes should be levied and collected under the latest official valuation.

6. Same—Metropolitan   District—Tax   Rate—State-Equalized
    Valuation.

> A metropolitan authority is entitled to the proceeds of the tax
> rate fixed by its commissioners as applied to the State-equalized
> value of the year in which the tax is collected (Act No. 147,
> § 7, Pub. Acts 1939).

7. Costs—Public Question—Metropolitan Districts—Measure of
    Tax Rate—Current State-Equalized Valuation.

> No costs are allowed in mandamus proceeding whereby metro-
> politan authority sought determination as to whether measure of
> tax rate was the previous or current State-equalized assessed
> valuation of property within its district, a public question be-
> ing involved (Act No. 147, § 7, Pub. Acts 1939).

Mandamus by Huron-Clinton Metropolitan Authority against Board of Supervisors of Oakland County and others to compel the payment to plaintiff of the amount of taxes computed on the 1944 equalized valuation. Submitted October 15, 1946. (Calendar No. 43,561.) Writ granted January 7, 1947.

*Miller, Canfield, Paddock & Stone,* for plaintiff.

*Harry J. Merritt,* Corporation Counsel, for defendants.

Sharpe, J.   This is a mandamus proceeding instituted in this Court to determine whether the tax rate for the Huron-Clinton Metropolitan Authority for the year 1944–1945 is to be levied on the State equalized valuation for the year 1944 or for the year 1943.

The facts forming the basis of this question are as follows: The authority estimated the amount required for its use for the fiscal year 1944–1945 to be $745,978.13, and determined that the necessary tax rate to raise that amount would be three-sixteenths of a mill on the dollar of assessed valuation in the five counties. It so certified to the boards of super-

visors of the counties on May 9, 1944, setting up also the amount apportioned to the several counties according to the State equalized value for 1943, the last equalization then in force. The amount so apportioned to Oakland county was $64,687.50.

·After this certificate was filed, the State equalization for 1945 was made. Under this equalization, in force at the time of tax collection in December, 1944, the amount of the tax at the rate of three-sixteenths of a mill on the equalized valuation in Oakland county would be $75,000.

The Authority requested defendants, as the financial officers of Oakland county, to pay to it the amount of tax collected on the basis of a total tax of $75,000 at the rate of three-sixteenths of a mill on the 1944 equalized value. The county refused to pay on that basis on the ground that the rate of three-sixteenths of a mill should be applied to the 1943 equalized value.

Act No. 147, § 7, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2289–7, Stat. Ann. 1946 Cum. Supp. § 5.2148 [7]), creating the Huron-Clinton Metropolitan Authority as a metropolitan district provides:

"The commissioners may levy for the purposes of the authority a tax of not more than one-quarter mill upon each dollar of the assessed value of the property of the district. The board shall ascertain the total taxes or appropriation required for any year and shall thereupon certify to the board of supervisors of each county comprising the district the necessary tax rate to raise such amount, which shall be uniform in the district, and shall take into consideration the ratio that the total assessed valuation of each respective county bears to the total assessed value of all property, real and personal in said entire district according to the last assessment in each of said respective counties."

We have had occasion to construe the above section in *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties*, 300 Mich. 1, 24, we there said:

"The act does not create a separate and independent tax unit to which its portion of our millage tax must be apportioned by the tax allocation boards of the respective counties."

In *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties*, 304 Mich. 328, 340, we said:

"The State board of equalization is the final authority which determines valuations upon a standard uniform to all counties. To produce the required uniformity between counties of the district, the Authority tax rate should be determined upon the basis of State-equalized valuation."

It is now settled law that the Authority is not a separate and independent taxing unit and that the tax rate fixed should be levied on the property according to the State-equalized valuation.

Defendants urge that the Authority does not determine the tax rate, but certifies to the counties the total amount of its budget and the proportionate part of that amount to be raised by each county according to the previous year's State-equalized value. The act does not state when the commissioners shall determine the amount to be raised and the tax rate to be levied, except that by virtue of 1 Comp. Laws 1929, § 3425 (Stat. Ann. § 7.55), it should be done prior to the October session of the board of supervisors.

As a matter of convenience the Authority determined its tax rate prior to the second Monday of May of each year in order that counties might include the

Authority's tax in their budgets. In so doing the Authority used the valuations of the previous year. When the tax allocation board as provided for in Act No. 62, Pub. Acts 1933, as amended,[*] is in session it examines the budgets and statements of local units and determines the tax rates exclusive of debt-service tax rates which would be required according to its proposed budget. These budgets or estimates must be filed with the county tax allocation board on or before the second Monday in May of each year. At this time the allocation board uses, as a basis for determining the tax rate, the assessed valuation as equalized for the previous year, however, the amount of money to be raised is subject to variations by the future process of State equalization.

The measure of the tax rate is the assessed valuation of the current year as corrected by equalization for the next tax roll. Each year establishes a new valuation for the levy of its taxes. All taxes should be levied and collected under the latest official valuation.

The Authority is entitled to the proceeds of the tax rate fixed by its commissioners as applied to the State-equalized value of the year in which the tax is collected. The writ of mandamus will issue, if necessary, requiring the board of supervisors and the county treasurer of Oakland county to make a settlement of the 1944 taxes on the basis of three-sixteenths of a mill on the 1944 valuation of $400,000,000, or a total of $75,000. A public question being involved, no costs are allowed.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.

---

[*] See Comp. Laws Supp. 1940, 1945, §§ 3551–21 *et seq.*, Stat. Ann. and Stat. Ann. 1946 Cum. Supp. § 7.61 *et seq.*—REPORTER.